Argued and submitted September 12, orders vacated, petition for judicial review
dismissed September 19, 1995

## EMERALD PEOPLES UTILITY DISTRICT,
an Oregon Municipal Corporation;
Don't Waste Oregon Council,
a non-profit corporation,
Colleen O'Neill, Lloyd K. Marbet and Tom Dottl,
*Petitioners,*

*v.*

## ENERGY FACILITY SITING COUNCIL
and Portland General Electric Company,
*Respondents.*

(SC S41989)

902 P2d 1134

Linda K. Williams, Portland, argued the cause and filed the brief for petitioners.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Energy Facility Siting Council. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the brief for respondent Portland General Electric Company.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Durham, Justices.*

VAN HOOMISSEN, J.

---

* Graber, J., did not participate in this decision.

## VAN HOOMISSEN, J.

Petitioners petition for judicial review of a decision of the Energy Facility Siting Council of Oregon (EFSC) which, through rulemaking procedures, amended provisions of OAR 345-26-370 pertaining to the disposal of certain radioactive components of the Trojan nuclear power facility (Trojan) in Columbia County, which ceased operations in 1993.

The EFSC and Portland General Electric (PGE)[1] assert as an initial matter that this court does not have jurisdiction under ORS 469.403(3) (1993) to hear petitioners' appeal. Respondents also respond to the merits of petitioners' various claims. Because we find that the jurisdiction issue is dispositive in this case, we find it unnecessary to set forth each side's arguments on the merits of the appeal.

■ This court has jurisdiction to decide whether it has jurisdiction. *Forelaws on Board v. Energy Fac. Siting Council*, 303 Or 541, 543, 738 P2d 973 (1987). This court's original jurisdiction over certain decisions by the Energy Facility Siting Council is purely statutory. *See* ORS 469.403(3) (1993) (providing limited jurisdiction in this court). To determine whether ORS 469.403(3) (1993) confers jurisdiction on this court in this context, we follow our standard methodology for statutory construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (setting forth methodology).

We first turn to the text of the statutory provision as the best evidence of legislative intent. *Id.* at 610.

ORS 469.403(3) (1993) provided in part:

> "Jurisdiction for judicial review of the [EFSC's] approval or rejection of an *application for a site certificate* is conferred upon the Supreme Court. Proceedings for review shall be instituted by filing a petition in the Supreme Court." (Emphasis added.)

Several of the key terms used in this statute also are defined by statute. ORS 469.300 provides in part:

---

[1] State respondents and PGE have submitted separate response briefs. Because we find the arguments in both respondents' briefs on the dispositive issue here to be essentially the same, we consider those arguments together.

"(2)    'Application' means a request for approval of a particular site or sites *for the construction and operation* of an energy facility *or the construction and operation* of an additional energy facility upon a site for which a certificate has already been issued[.]

"* * * * *

"(23)    'Site certificate' means the binding agreement between the State of Oregon and the applicant, authorizing the applicant *to construct and operate* an energy facility on an approved site, incorporating all conditions imposed by the state on the applicant and all warranties given by the applicant to the state." (Emphasis added.)

Petitioners urge this court to take an expansive view of its jurisdiction under ORS 469.403(3) (1993). Petitioners first point out that the definition of "site certificate" incorporates by reference "all conditions imposed by the state on the applicant." Petitioners then note that ORS 469.401(2) (1993) provided in part:

"The site certificate shall contain conditions for the protection of the public health and safety and to insure compliance with the standards, statutes and rules described in ORS 469.501 and 469.503. The site certificate shall require both parties to abide by local ordinances and state law and the rules of the council in effect on the date the site certificate is executed, except that upon a clear showing of a significant threat to the public health, safety or the environment that requires application of later-adopted laws or rules, the council may require compliance with such later-adopted laws or rules."[2]

Petitioners would have us hold, therefore, that whenever an issue arises concerning "conditions imposed by the state on the applicant," ORS 469.300(23), due to a later-adopted rule, order, or statute, the issue is reviewable by this court under ORS 469.403(3) (1993), because a *de facto* amendment to a site certificate has occurred.

Even were we to accept that reading of the definition of site certificate and conclude that a later-adopted rule could,

---

[2] ORS 469.410(2), which governs site certificate matters for energy facilities constructed or approved before 1975, including Trojan, similarly provides that the applicant must "abide by the rules of the [EFSC] adopted pursuant to ORS 469.300 to 469.570, 469.590 to 469.619 and 469.930."

indeed, amount to a *de facto* amendment to the site certificate, that does not necessarily lead to the conclusion that ORS 469.403(3) (1993) confers jurisdiction on this court to review such an amendment in the first instance.

Petitioners argue that in the past this court has taken an expansive view as to its jurisdiction under ORS 469.403(3) (1993), relying on the court's decision in *Forelaws on Board*. That case was concerned with whether the EFSC's decision that it lacked jurisdiction over an application for a site certificate was, in fact, an "approval or rejection of an application for a site certificate" over which this court had jurisdiction. 303 Or at 543. Because the EFSC's action amounted to a rejection of an application for a site certificate, this court indicated that it had jurisdiction. *Id.* at 544. That case, however, does not stand for a broad proposition that this court takes an expansive view as to its jurisdiction under ORS 469.403(3) (1993). Rather, the case indicated that, where the EFSC rejected an application for a site certificate, its *reasons* for doing so, *i.e.*, its conclusion that a site certificate was not necessary, did not change the EFSC's action into something other than a rejection of an application for a site certificate.

The key difference between this case and *Forelaws on Board* is that, here, the record before us does not show anything that, by any stretch of the imagination, can be called an "application," which, as noted above, is defined in pertinent part as "a request for approval of a particular site or sites for the construction and operation of an energy facility or the construction and operation of an additional energy facility upon a site for which a certificate has already been issued, filed in accordance with the procedures established pursuant to ORS 469.300 to 469.570, 469.590 to 469.619, 469.930 and 469.992." ORS 469.300(2). The second half of this definition involves applications in cases where a site certificate already has been issued, and the applicant seeks to create an additional energy facility. Petitioners do not suggest any way that that half of the definition could apply in this case, and we can perceive none.

That leaves us with the first half of the definition, concerning requests "for approval of a particular site or sites for the construction and operation of an energy facility." *Id.* Respondents focus on the phrase "approval of a particular

site or sites," and argue that there are no questions involved here concerning approval of particular sites — the Trojan site was approved decades ago. Petitioners, on the other hand, argue that the adoption of PGE's Large Component Removal Plan is "approval of * * * [the] operation of an energy facility."[3]

■     For the following reasons, we believe respondents are correct. When construing a statute, this court may not "insert what has been omitted, or * * * omit what has been inserted." ORS 174.010. Petitioners' suggested interpretation of ORS 469.403(3) (1993) and the relevant definitions in ORS 469.300 would require this court to omit the statutory words "approval of a particular site or sites," ORS 469.300(2), and, in effect, to insert a provision allowing amendments of site certificates and judicial review in this court for such amendments. We find further textual support for our conclusion that this case does not involve an "application" in the syntax of the definitional sentence itself; the second half of the definition, which concededly does not apply here, addresses specifically an application in situations where a site certificate already has been issued. It is logical to conclude, therefore, that the first half of the definitional sentence, concerning "*approval of a particular site* or sites for the construction and operation of an energy facility," addresses itself to initial applications for site certificates, rather than modifications in the operations of an existing facility.

■     Thus, we find no support in the text of the statutes for petitioners' proposition that ORS 469.403(3) (1993) confers jurisdiction over this dispute in this court. The first level of analysis under our statutory construction methodology, however, also includes the context of the statutory provisions at issue. *PGE*, 317 Or at 611. A review of the entire section of ORS chapter 469 concerning the regulation of energy facilities reveals no legislative intent that jurisdiction over this

---

[3] "Operation" is not defined by the statutes. Petitioners argue that the term "operation" includes activities such as the large component removal after the closing of an energy facility. Respondents argue that "operation" and "retirement" of an energy facility are different things under the statutory scheme, and that large component removal is not "operation" of such a facility for purposes of ORS 469.300(2). Because resolution of this dispute over the terms is not required in this case, we express no opinion on this matter.

specific dispute is conferred on this court. Contextual support for our conclusion that no "application" was involved in this case may be found in ORS 469.330(1) (1993), which provided in part that an applicant for a site certificate must provide the EFSC with a notice of intent to file such an application, which "must describe the proposed site and facility with sufficient detail to enable the council to identify the proposed site and understand its proposed use."[4] Further contextual support for this conclusion may be found in ORS 469.401(1), which provides in part that a site certificate "shall authorize the applicant to construct, operate *and* retire the proposed energy facility subject to conditions set forth in the site certificate. The duration of the site certificate shall be the life of the facility." (Emphasis added.) That statute does not appear to contemplate separate "applications" for "site certificates" in the manner suggested by petitioners. *Compare* ORS 469.607 (concerning the EFSC's authority to adopt rules regarding transportation for certain classes of radioactive material).

In sum, we find no textual or contextual support for petitioners' contention that this court has jurisdiction over this dispute.[5]

The court vacates the order staying the EFSC's adoption of the rule amendments and order approving PGE's Large Component Removal Plan and PGE's activities under the Large Component Removal Plan. The petition for judicial review is dismissed.

---

[4] The present controversy, by comparison, arose when PGE requested the EFSC to amend its administrative rules to allow for large component removal before decommissioning.

[5] We reach this conclusion based solely on the statutes in effect at the times relevant to this case. We note that the 1995 legislature has made significant amendments to ORS chapter 469. Or Laws 1995, ch 505. For example, the new law provides that the "validity of a rule adopted by the [EFSC] may be determined only upon a petition by any person to the Supreme Court." *Id.* § 19. This law did not go into effect until July 5, 1995, long after the rules at issue in this case were adopted, and the petition for review filed in this court. Petitioners also point out that section 2 of the 1995 Act refers to judicial review of an "amendment to a site certificate" and places review of such amendments in this court. The legislature's subsequent enactment of those provisions does not alter our analysis of the text of the statutory provisions which we deem to apply to the case at hand.